## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 25-cv-289(1)-LMP-EMB |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Tyler Lawrence Alm, | |
| Defendant. | |

Before the Court are two motions filed by Defendant Tyler Lawrence Alm: a "Motion to Suppress Evidence of Search and Seizure" (Dkt. No. 134) and a "Motion to Suppress Evidence from a Search Warrant" (Dkt. No. 135). Both motions have been referred to me for a report and recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. I recommend that the motions be DENIED.

## I.    Factual Background

In late 2024, the Paul Bunyan Drug Task Force began investigating methamphetamine trafficking in areas of Minnesota outside the Twin Cities metro area. Task Force agents determined that several people were trafficking methamphetamine from a home in Anoka County that belonged to John Michael Duffy.

On January 28, 2025, Task Force agents obtained a warrant to search Duffy's home, which they executed two days later.  Agents found suspected methamphetamine, drug-packaging materials, cash, a firearm, and multiple cell phones.  They seized Duffy's cell phone but didn't arrest Duffy.

In searching Duffy's phone pursuant to a warrant about two weeks later, agents found messages between Duffy and a person identified "Tyler" discussing changing phone numbers frequently and exchanging photos of methamphetamine paraphernalia.  (Gov't Ex. 4 at 14–15.)  Agents also found messages between Duffy and other individuals that referenced "Tyler" and discussed drug trafficking.

On March 7, 2025, Task Force Special Agent Jeffrey Douglas Amey signed an affidavit in support of a second search warrant for Duffy's home. In the affidavit, Amey swore that Task Force agents had "received information from human sources on numerous occasions and over an extended period of time" indicating that methamphetamine was being distributing from Duffy's home to "outstate Minnesota."  (Gov't Ex. 2 at 4.)

Based on Amey's affidavit and application, Judge Karin McCarthy found probable cause to sign a search warrant the following day, on March 8, 2025.  (Gov't Ex. 2 at 21–24.)  The search warrant authorized officers to search Duffy's home for:

> Controlled substances including but not limited to methamphetamine, items indicative of drug sales such as packaging materials, scales, distribution materials, cutting agents, US currency and precious metals in the presence of controlled substances, documents including letters, ledgers, financial transaction statements, indicia of occupancy and ownership, proof of residency, ***electronic communications devices***, storage locker keys, and permission to photograph and record the scene.

(Gov't Ex. 2 at 21 (emphasis added).)

Agents executed the search warrant at Duffy's home on March 17, 2025.  In the home, agents found 1.5 pounds of methamphetamine packaged in separate bags, a loaded firearm, a digital scale, cash, and other items.

Also in the home, agents found Defendant Tyler Lawarence Alm, making breakfast in the kitchen.  Alm had two cell phones in his possession.  He explained that one was his "personal phone" and the other was his "work phone."  (Gov't Ex. 4 at 19.)  When agents asked Alm to make a phone call from his "work phone," they saw him struggle to navigate and use it.  (*Id.*)

Agents seized both of Alm's phones.  They advised Alm of his rights under *Miranda*.  Alm waived his right to silence and denied any involvement in drug trafficking.  Special Agent Amey explained that he believed Alm's statements were false because of the messages agents had previously found on Duffy's phones implicating "Tyler" in drug trafficking.

On April 7, 2025, Judge John Melbye issued a search warrant for both of Alm's phones.

A grand jury returned an indictment charging Alm with one count of conspiracy to distribute methamphetamine.

Alm now seeks to suppress the evidence obtained from the phones on grounds that they were unreasonably seized and searched.  (Pl. Mots., Dkt. Nos. 134, 135.)  The Government filed an omnibus response to the motions. (*See* Gov't Mem., Dkt. No. 155.)  I held a hearing on these motions on January 13, 2026, at which the Government introduced three relevant exhibits, which were admitted without objection,[1] and FBI Task Force Special Agent Newhouse testified. After the hearing, Alm filed a supplemental brief (Pl. Supp. Br., Dkt. No. 179) and the Government filed a supplemental response (Gov't Supp. Br., Dkt. No. 182).

## II.    Analysis

The Fourth Amendment to the U.S. Constitution protects a person's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.

---

[1] The Government provided these exhibits to Alm and the Court at the hearing.  Neither party attached them to their briefing or otherwise filed them in the record.  Exhibits 2 and 4 are attached to this report and recommendation.  Exhibit 3 is an audio file.

4

Here, Alm argues that agents violated the Fourth Amendment's prohibitions against (A) unreasonable seizures when they took and held his phones and (B) unreasonable searches when they searched his phones.[2]

### A. Seizure of Alm's phones.

Alm argues that the agents' taking of his phones constituted a "seizure" for Fourth Amendment purposes. I agree that this was a seizure as there was "meaningful interference with [Alm's] possessory interests in that property." *United States v. Jackson*, 466 U.S. 109, 113 (1984).

The question is whether the seizure was reasonable. Alm says no, for three reasons. First, he argues that the March 8 warrant didn't justify the seizure because it failed to mention Alm's name or effects. Second, he argues there was not probable cause to justify a warrantless seizure of the phones. Third, he argues that the seizure was unduly prolonged.

---

[2] Alm's supplemental briefing states that "when officers entered the Duffy residence and found Alm merely cooking eggs in the kitchen, they needed to at least temporarily detain him to secure the premises." (Pl. Supp. Br. at 3.) Alm thus seemingly concedes that he was lawfully detained during the search. However, he also states: "the issue is whether the officers had a legally sufficient reason to detain him . . . ." (*Id.*) Alm does not at all develop this detention issue. To the extent that Alm's supplemental brief seeks to challenge the lawfulness of his detention, I recommend that it be denied as waived because he has not carried his burden "to come forth with some evidence and argument to support" that position. *United States v. Edwards*, 563 F. Supp. 2d 977, 994 (D. Minn. 2008), *aff'd sub nom, United States v. Bowie*, 618 F.3d 802 (8th Cir. 2010).)

### 1. The March 8 warrant authorized seizure of Alm's phones.

As stated, the Fourth Amendment requires that a warrant "particularly" describe the "things to be seized." U.S. Const. amend. IV. The particularity requirement avoids "a general, exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). Courts evaluate compliance with the particularity requirement according to "a standard of practical accuracy rather than a hypertechnical one." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011) (internal quotation marks omitted). How particular a warrant must be varies "depending on the circumstances and the type of items involved." *United States v. Frederickson*, 846 F.2d 517, 519 (8th Cir. 1988). As such, a court does not resolve issues concerning particularity "in a vacuum," but instead "will base its determination on such factors as the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *Fiorito*, 640 F.3d at 346 (internal quotation marks omitted).

Here, Alm argues that his phones' seizure was not justified by the March 8 residential search warrant "since the search warrant clearly did not include Alm." (Def. Supp. Br. at 4.) In other words, he contends, the warrant was insufficiently particular.

It's true that the warrant did not mention Alm.  But the purpose for which the warrant was issued (to search the home for evidence of methamphetamine trafficking), the nature of the items ("electronic communication devices") to which it is directed, and the total circumstances surrounding the case make the seizure of Alm's phones  pursuant to the warrant reasonable.  *See Fiorito*, 640 F.3d at 346.

Special Agent Amey provided a twenty-page warrant application in which he swore that his training and experience led him to believe that as a general matter "persons involved in the use and distribution of drugs often have conversations with drug suppliers and drug customers via phone, email, and other electronic devices."  (Gov't Ex. 2 at 3; *see also id.* at 4.)  Amey also swore that he was generally "aware that individuals involved in drug trafficking will often change their . . . phone numbers in an attempt to avoid law enforcement detection."  (*Id.* at 9.)

Amey also specifically explained that in the investigation leading up to the warrant application, a confidential informant had "overheard phone conversations between Duffy and others to arrange purchasing methamphetamine from him."  (Gov't Ex. 2 at 6.)  Another confidential informant stated that they "prearranged" methamphetamine transactions "over cellular phone communications with Duffy" before traveling to Duffy's home in Nowthen to obtain the methamphetamine.  (*Id.* at 7.)

Based on this information, the warrant authorized seizure of "electronic communication devices" found in Duffy's home.  Indeed, "it would [have been] *unreasonable* and impractical" if Judge McCarthy "turn[ed] a blind eye to the virtual certainty that drug dealers use[d] cell phones" in the alleged trafficking operation given Amey's application.  *United States v. Eggerson*, 999 F.3d 1121, 1127 (8th Cir. 2021) (emphasis added); *see also United States v. Vizcarra-Milan*, 15 F.4th 473, 505 (7th Cir. 2021) (holding there was an "obvious likely connection between the [drug-trafficking] crime and the phones" and therefore "good reason to think that the [defendant] and his crew had multiple phones that would be difficult to identify as being used by particular people").  Under these circumstances, I recommend finding that the search warrant satisfied the Fourth Amendment's particularity requirement.

### 2. Probable cause independently supported agents' seizure of Alm's phones.

Alm next argues that agents did not have reason to conduct a warrantless seizure of the phones because "there was no independent probable cause." (Def. Supp. Br. at 3.)  As just discussed, I recommend finding that the seizure of Alm's phones was authorized by the March 8 warrant.  But even without the warrant, I recommend finding that agents had probable cause to seize the phones.

8

"The warrantless seizure of property is per se unreasonable unless it falls within a well-defined exception to the warrant requirement." *United States v. Mays*, 993 F.3d 607, 614 (8th Cir. 2021) (internal quotation marks and citation omitted). One exception is when agents "have probable cause to believe" that (a) property "holds contraband or evidence of a crime" and (b) "the exigencies of the circumstances demand" immediate seizure "pending issuance of a warrant to examine its contents." *United States v. Place*, 462 U.S. 696, 701 (1983); *see also Mays*, 993 F.3d at 614.

First, there was probable cause to believe that Alm's phones would contain evidence of methamphetamine trafficking. "Probable cause exists when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Reed*, 921 F.3d 751, 757 (8th Cir. 2019) (quoting *Illinois v. Gates*, 462 U.S. 213, 230, 238 (1983)).

Here, agents were investigating Duffy's home for methamphetamine trafficking; searched Duffy's home in January and found significant amounts of drugs and cash there; seized and searched Duffy's phone, finding indications of drug trafficking in messages between him and "Tyler" and between him and others about "Tyler"; and, less than six weeks later, found (Tyler) Alm in Duffy's home—in possession of two phones and in proximity to yet another large quantity of methamphetamine and cash.

Considering the totality of these circumstances, there was at least a fair probability that evidence of criminal activity would be found on Alm's phones. *See Eggerson*, 999 F.3d at 1127. Alm argues that the agents didn't know for sure whether the two phones they seized from him that day were the same ones used to communicate with Duffy earlier. But he acknowledges that they needed only a "fair probability" that criminal evidence would be found on the phones. (Pl. Supp. Br. at 4.) They had that much.

Second, agents had an objectively reasonable belief that exigent circumstances justified their seizure of Alm's phones. Exigent circumstances exist when, if the property is not seized immediately, there is a risk that the evidence contained therein would be destroyed. *See Radloff v. City of Oelwein*, 380 F.3d 344, 348 (8th Cir. 2004). The analysis focuses on whether a "reasonable, experienced police officer would believe" objectively that exigent circumstances exist. *United States v. Williams*, 431 F.3d 1115, 1118 (8th Cir. 2005) (internal quotation marks omitted).

Here, without immediately seizing the phones, agents "risked losing digital evidence" because Alm easily could have removed or destroyed any evidence on the phones if he retained possession of them. *Mays*, 993 F.3d at 616 (8th Cir. 2021) (citing *United States v. Stephen*, 984 F.3d 625, 631 (8th Cir. 2021)).

10

To be sure, "evidence . . . stored on an electronic device does not itself constitute exigent circumstances." *United States v. Shrum*, 59 F.4th 968, 972 (8th Cir. 2023). But here, Alm knew that agents had identified him on the scene of their methamphetamine-trafficking investigation and knew that they suspected him of being involved in the operation due to his cell phone communications with Duffy. Special Agent Amey told Alm at the time of the search that agents had found suspicious messages between him and Duffy, leading Amey to believe that Alm was being untruthful when he told agents that he was not involved in drug trafficking. (Gov't Ex. 3.)

"Under the circumstances, and knowing how easily evidence could be deleted from a cell phone, it was objectively reasonable for [agents] to be concerned that [Alm] could destroy the evidence on the phones." *United States v. Wright*, No. 23-cr-160-NEB-JFD, 2025 WL 602465, at *7 (D. Minn. Feb. 25, 2025) (internal quotation marks and citation omitted); *see also United States v. Clutter*, 674 F.3d 980, 983, 985 (8th Cir. 2012) (warrantless seizure reasonable because evidence on defendant's computers could be removed or destroyed even though the defendant was in jail at time of seizure); *Shrum*, 59 F.4th at 973 (finding phone seizure justified under exigent-circumstances exception because defendant was aware of allegations against him and other individuals implicated in offense were suspected of having tried to destroy evidence). Thus, agents reasonably seized the phones.

11

### 3. The seizure was not unduly prolonged.

Alm next argues that even if the initial seizure was reasonable, it became unreasonable when agents waited three weeks to get a search warrant for the phones. Alm contends that this "'was . . . longer than reasonably necessary for the [agents], acting with diligence, to obtain the warrant.'" (Pl. Supp. Br. at 5 (citing *Illinois v. McArthur*, 531 U.S. 326, 337 (2001)).

Courts look at the totality of the circumstances when assessing whether agents' delay in obtaining a search warrant was objectively reasonable, balancing law-enforcement concerns against privacy concerns. *See Mays*, 993 F.3d at 616–17.

On the law-enforcement side of the ledger are the government's interest in holding the property as evidence, the investigation's nature and complexity, the warrant application's quality, and "any other evidence proving or disproving [agents'] diligence in obtaining the warrant." *Id.* at 617.

Here, as discussed, agents had significant interest in holding the phones as evidence given their months-long, complex investigation into the methamphetamine-trafficking operation involving multiple confidential sources, suspects, and warrants; repeated seizures of drugs and cash from Duffy's house; evidence obtained from Duffy's phones implicating Alm in drug

12

trafficking; presence of Alm at Duffy's house with two phones at the same time that agents found a large amount of drugs and cash; and the fair probability that Alm would destroy any incriminating evidence on the phones if allowed to retain them. The twenty-one-page search warrant application ultimately produced was detailed and robust.

I find under these circumstances that the agents had a significant interest in retaining possession of the phones for the three-week period.

On the privacy-interests side of the ledger, I consider the nature of the seized property and how significantly its seizure interfered with Alm's possessory interest, if he consented to the seizure, and the length of the delay. *See Mays*, 994 F.3d at 617.

Here, the essential nature of the phones was data storage and communication. The delay didn't significantly interfere with Alm's possessory interest in the phones as data-storage devices because it was unlikely to result in the loss of the phones' data. *United States v. Bragg*, 44 F.4th 1067, 1072 (8th Cir. 2022). Nor did the delay otherwise significantly interfere with Alm's possessory interest in the phones since Alm "never sought return of the property." *Id.* Although Alm didn't consent to the seizure, the fact that he never asked for the phones back makes it tough for him to now "prove[] that the delay in the search . . . adversely affect[ed] legitimate interests." *Id.*

Finally, the twenty-one-day delay, while "of concern," was not unreasonable. *Bragg*, 44 F.4th at 1072. In *Bragg*, the Eighth Circuit held that a twenty-four-day delay in applying for a warrant to search the defendant's cell phone was not unreasonable given that the defendant never sought the phone's return and there was no risk of data loss. *Id.* at 1072–73. In *United States v. Stabile*, 633 F.3d 219, 235–36 (3d Cir. 2011), the Third Circuit held that a delay of three months was troubling but reasonable when the defendant never sought return of the hard drivers in question.

On balance, I find that the government's interests outweigh Alm's and that the three-week delay in obtaining a phone search warrant was reasonable. I therefore recommend denying Alm's motion to suppress evidence obtained from the phones on the grounds that the seizure was unduly prolonged or otherwise unreasonable under the Fourth Amendment.

### B. Search of the phones.

Alm also seeks suppression on the ground that the phone search warrant that Judge Melbye issued lacked probable cause. Alm summarily argues that the warrant application didn't set forth facts sufficient to show a fair probability that evidence of a crime would be found on the phones. The only allegation that Alm makes to support this argument is that "the search warrant included several pages of information relating almost entirely to Duffy before even mentioning Alm." (*Id.* at 7.) That doesn't persuade me.

14

Courts reviewing whether a warrant was supported by probable cause pay "great deference" to the judge who issued the warrant. *Gates*, 462 U.S. at 236. When the issuing judge relies only on an affidavit to issue the warrant, the reviewing court may look only at the information "found within the four corners of the affidavit" to determine if probable cause existed. *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014) (cleaned up).

Using "common sense" and considering the "totality of the circumstances," I find deference to Judge Melbye's probable-cause determination is warranted here. *United States v. Grant,* 490 F.3d 627, 631 (2007) (internal quotation marks and citation omitted). Special Agent Amey's twenty-one-page warrant application averred that Alm and Duffy were the only two people at Duffy's house during the March 17, 2025, search, when agents found large quantities of methamphetamine and cash. Agents found messages between Alm and Duffy sharing photos of drug paraphernalia and discussing regularly changing phone numbers; Amey swore that the latter fact, along with the fact that Alm possessed two phones, is common drug-trafficking behavior. Agents also discovered phone messages between Duffy and other individuals implicating Alm in drug-trafficking activity. And Alm had several prior felony drug convictions, the most recent of which was in 2023. There is a fair probability, based on these facts contained in the application, that evidence of a crime would be found on Alm's phones.

15

Finally, the Government argues that even if probable cause was lacking, suppression isn't warranted because officers had a good-faith belief in the validity of the warrant.  (Gov't Supp. Br. at 13–14) (citing *United States v. Leon*, 468 U.S. 897 (1984).)

Typically, "[e]vidence obtained in violation of the Fourth Amendment"—based on a warrant lacking probable cause, for example— is subject to the so-called exclusionary rule, meaning it must be excluded from use "in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Cannon*, 703 F.3d 407, 412 (8th Cir. 2013) (internal quotation marks and citation omitted).  But an exception to the exclusionary rule exists "'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope,' even if the warrant is subsequently invalidated." *Cannon*, 703 F.3d at 412 (8th Cir. 2013) (quoting *Leon,* 468 U.S. at 920–21).

*Leon*'s "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization." *United States v. Norey*, 31 F.4th 631, 635 (8th Cir. 2022) (internal quotation marks and citation omitted).  Courts here consider "the totality of the circumstances, including information known to the officer but not presented to the issuing judge." *Id.* (internal quotation marks and citation omitted).

16

*Leon* recognizes four circumstances when an officer's reliance on the warrant is not in good faith:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable;* and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*Fiorito*, 640 F.3d at 345 (quoting *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008)).  Alm does not allege the first two circumstances, and I find no evidence of either.  As discussed above, the latter two circumstances are not present here.  Thus, even if the phone search warrant lacked probable cause, I would recommend finding that the *Leon* good-faith exception to the exclusionary rule applies such that suppression is not warranted.

## RECOMMENDATION

For the foregoing reasons and upon careful consideration of the entire record, IT IS HEREBY RECOMMENDED that:

1.  Alm's Motion to Suppress from Search and Seizure (Dkt. No. 134) be DENIED; and

2. Alm's Motion to Suppress from Search Warrant (Dkt. No. 135) be DENIED.

Date: April 2, 2026

s/*Elsa M. Bullard*
ELSA M. BULLARD
United States Magistrate Judge

17

## **NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).