**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 25-cr-289(1) (LMP/EMB) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| TYLER LAWRENCE ALM, | |
| Defendant. | |

Raphael Coburn, **United States Attorney's Office, Minneapolis, MN**, for Plaintiff.

Robert A. Lengeling, **Law Office of Robert A. Lengeling, PLLC, Minneapolis, MN**, for Defendant.

Defendant Tyler Lawrence Alm is indicted on one count of conspiracy to distribute methamphetamine. *See* ECF No. 97 at 1. On December 19, 2025, Alm filed two motions to suppress. ECF Nos. 134, 135. On April 2, 2026, United States Magistrate Judge Elsa M. Bullard issued a Report and Recommendation ("R&R") recommending denial of both motions. ECF No. 188. Alm timely objected. ECF No. 192. For the following reasons, the R&R is adopted and the motions to suppress are denied.

## BACKGROUND[1]

On January 30, 2025, Bemidji Police Department Special Agent Jeffrey Amey, alongside other members of the Paul Bunyan Drug Task Force and the FBI's Headwaters

---

[1] Alm makes some objections to the factual assertions in the R&R. ECF No. 192. The otherwise thorough factual recitation in the R&R to which Alm does not object, ECF No. 188 at 1–4, is adopted as the factual background. The Court describes here only the facts necessary to resolve Alm's objections.

Safe Trails Task Force, searched a home owned by John Michael Duffy. ECF No. 188-2 at 13. Police found a distribution-level quantity of suspected methamphetamine, drug paraphernalia, cash, a firearm, and multiple cell phones. *Id.*

Police seized the phones and obtained a second warrant to search them.[2] *Id.* at 14. In one of the phones, police found messages between Duffy and a contact Duffy had saved in his phone as "Tyler." *Id.* at 15. That "Tyler" had a phone number registered with a mobile banking application under the name "Tyler Alm." *Id.* In the messages, the two discussed frequently changing phone numbers and exchanged multiple photos of methamphetamine paraphernalia. *Id.* Duffy and "Tyler" also communicated in "code" that police understood to relate to "controlled substance sales." ECF No. 197 at 9:20–22. Police also found messages from Duffy to other individuals that referenced "Tyler" and drug trafficking. ECF No. 188-2 at 15. Finally, and separate from the search of Duffy's phone, police found "drug ledgers" in Duffy's home that made repeated references to "Tyler." ECF No. 197 at 10:17–21.

On March 7, 2025, police obtained another warrant to search Duffy's home. ECF No. 188-2 at 18; *see also* ECF No. 188-1 at 21–24. The warrant authorized police to search Duffy's home for:

> Controlled substances including but not limited to methamphetamine, items indicative of drug sales such as packaging materials, scales, distribution materials, cutting agents, US currency and precious metals in the presence of controlled substances, documents including letters, ledgers, financial

---

[2] Police also found Duffy's girlfriend in the home in possession of multiple cell phones. ECF No. 197 at 25:8–15. Police determined that they had no evidence that she was engaged in the sale of methamphetamine, so they did not arrest her or seize her phones. *Id.* at 29:15–19.

transaction statements, indicia of occupancy and ownership, proof of residency, electronic communications devices . . . storage locker keys, and permission to photograph and record the scene.

*Id.* at 21. On March 17, 2025, police executed the second search. ECF No. 188-2 at 19. Police again found a distribution-level quantity of methamphetamine and several thousand dollars in cash. *Id.* While not near the methamphetamine, unexpectedly, police also found Tyler Alm in the home making breakfast. *Id.*; ECF No. 197 at 21:11–15, 23:24–24:5. Alm had two phones, and police seized both. ECF No. 188-2 at 19. Alm had one of the phones in his pocket, and the other was in a common living room area. ECF No. 197 at 13:14–16; 30:4–13. Alm noted that one was his "work" phone and the other was his "personal" phone. ECF No. 188–2 at 19. Alm was given an opportunity to call his boss on his work phone but appeared to have difficulty and was ultimately unable to make a phone call.[3] *Id.* Alm denied involvement in Duffy's operation, but police told him that they had already learned about Duffy's digital communications with a "Tyler" and did not believe Alm's denials. ECF No. 197 at 16:8–17:2. On April 7, 2025, Special Agent Amey obtained a search warrant for both of Alm's phones. ECF No. 188-2 at 22–25. Police searched the phones on or about April 14, 2025. ECF No. 197 at 22:25–23:4.

---

[3] Alm objects to the R&R's finding that he had difficulty navigating his "work" phone. ECF No. 188 at 3. This was described in the April 7, 2025 search warrant affidavit. ECF No. 188-2 at 19. While Alm suggests the phone simply did not work and that he was unable to open it, ECF No. 192 at 1 ¶ 3, this does not change the analysis. Under either scenario, an inability to use a phone in the context of attempting to call one's boss— whether because of subterfuge or the phone not mechanically working—would provide further support to law enforcement that there might be evidence of a drug-trafficking conspiracy on Alm's "work" phone.

Alm was eventually indicted on one count of conspiracy to distribute methamphetamine. *See* ECF No. 97 at 1. On December 19, 2025, Alm filed two motions to suppress. ECF Nos. 134, 135. In the first, Alm argued that police had no legal authority to seize Alm's phones while conducting the March 2025 search and that police unreasonably delayed in subsequently seeking the April 2025 search warrant for Alm's phones. ECF No. 134. In the second, Alm argued that the April 2025 search warrant was not supported by probable cause. ECF No. 135.

Magistrate Judge Bullard held an evidentiary hearing on January 13, 2026, where Special Agent Brandon Newhouse, a deputy with the Beltrami County Sheriff's Office and one of the lead case agents, testified and the United States offered two search warrants. ECF Nos. 170, 197, 188-1 (Gov't Ex. 2), 188-2 (Gov't Ex. 4). Both Alm and the United States submitted supplemental briefing. ECF Nos. 179, 182. On March 19, 2026, Magistrate Judge Bullard issued the R&R, recommending the denial of Alm's motions. ECF No. 188. On April 16, 2026, Alm filed objections to the R&R. ECF No. 192.

## ANALYSIS

The Court reviews de novo the portions of the R&R to which Alm objects, *see* Fed. R. Crim. P. 59(b)(3), and reviews for clear error the portions of the R&R to which Alm does not object, *see United States v. Newton*, 259 F.3d 964, 966 (8th Cir. 2001).

## I.   Motion To Suppress Evidence from the March 2025 Search and Seizure

### A.   The Initial Seizure

Alm first argued that police had no lawful basis to seize his phones when they searched Duffy's home on March 17, 2025, because (1) the seizure was not authorized by

4

the March 2025 warrant; and (2) police did not have independent probable cause to seize his phones.  ECF No. 179 at 2–6.  Magistrate Judge Bullard rejected both arguments, finding that the scope of the warrant authorized the seizure of Alm's phones and, if not, probable cause and exigent circumstances justified the seizure.  ECF No. 188 at 5–11.

The Court agrees with Magistrate Judge Bullard that, regardless of whether the warrant justified the seizure,[4] police had an independent basis to seize Alm's phones.  In general, the Fourth Amendment prohibits "unreasonable seizures," and the "warrantless seizure of property is per se unreasonable unless it falls within a well-defined exception to the warrant requirement."  *Robbins v. City of Des Moines*, 984 F.3d 673, 680 (8th Cir. 2021).  One such exception is when "'law enforcement authorities have probable cause to believe' property 'holds contraband or evidence of a crime' and 'the exigencies of the circumstances demand' immediate seizure 'pending issuance of a warrant to examine its contents.'"  *United States v. Mays*, 993 F.3d 607, 614 (8th Cir. 2021) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)).

---

[4]    Whether a warrant for one person's home that authorizes the seizure of all cell phones in the home justifies the seizure of a third-party's phone simply because that phone is in the home at the time of the search is a highly fact-dependent question.  *See, e.g.*, *In re Search of Single-Fam. Home*, 549 F. Supp. 3d 810, 819 (N.D. Ill. 2021) (noting that "when the government believes a residence might contain a number of cell phones belonging to different people in the home, it cannot seize and search all of the cell phones it finds in the home based solely on a blanket warrant authorizing the seizure and search of any item that may contain evidence of the suspected crime"); *United States v. Vizcarra-Millan*, 15 F.4th 473, 504 (7th Cir. 2021) (expressing concern with a "warrant's failure . . . to limit the types of phones to be seized" without connecting the particular phones with probable cause of criminal activity).

Police had probable cause to suspect that Alm's phones held evidence of a crime. Probable cause exists when, "viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Reed*, 921 F.3d 751, 757 (8th Cir. 2019) (quoting *Illinois v. Gates*, 462 U.S. 213, 230, 238 (1983)). Prior to searching Duffy's home on March 17, 2025, police had already discovered: (1) messages on Duffy's phones between Duffy and "Tyler"; (2) that the phone number linked to Tyler's contact in Duffy's phone was registered with a banking application under the name "Tyler Alm"; (3) that Duffy and "Tyler" discussed changing phone numbers, exchanged multiple photos of methamphetamine paraphernalia, and spoke in "coded" language reasonably believed to be about controlled substance sales; (4) that Duffy spoke with other individuals who referenced "Tyler" and drug trafficking; and (5) that Duffy had a drug ledger that made repeated references to "Tyler." ECF No. 188-2 at 15; ECF No. 197 at 9:20–22, 10:17–21. Moreover, Alm was found in Duffy's home (the only other person there) with a "work" phone and a "personal" phone when police found distribution-level amounts of methamphetamine in the home. ECF No. 188-2 at 19; ECF No. 197 at 21:11–15, 23:24–24:5.

Here, police reasonably inferred that Alm was the "Tyler" with whom Duffy was communicating. Once that connection was established, seizing Alm's phones was reasonable as there was a "fair probability" that evidence of Duffy's or Alm's drug dealing would be found on Alm's phones. *See United States v. Eggerson*, 999 F.3d 1121, 1125 (8th Cir. 2021) (opining that "given the nature of the business and the need for easy and instantaneous communication with buyers, drug dealers may be even more likely to use

6

cell phones" and that cell phones are "tools of the drug trade" (citation modified)); *United States v. Burris*, 22 F.4th 781, 785 (8th Cir. 2022) (explaining that "traffickers often use multiple phones to avoid detection and to compartmentalize different points of contact in the drug dealing business").

Alm argues that "officers conducting the search had no idea who he was when they detained him" and "could not possibly know if he was the same person as the 'Tyler' they came across" during the previous searches of Duffy's phones. ECF No. 192 ¶¶ 4–5. But his argument both misstates the record and is legally irrelevant. First, that police did not recognize Alm when they entered the home is irrelevant because they learned who he was immediately after detaining him.[5] Once police learned his identity, they only needed a "fair probability" that his phones would contain evidence of a crime. *Gates*, 462 U.S. at 238. This they had. They did not need, as Alm suggests, air-tight proof that he was the same Tyler who communicated with Duffy.[6]

Alm also asserts that the R&R failed to mention that police found Duffy's girlfriend in Duffy's home during the January 2025 search, that she was in possession of a cell phone, and that police did not seize the phone "even though that cellphone would presumably be of evidentiary value to law enforcement." ECF No. 192 ¶ 2. Although he does not say so explicitly, Alm is seemingly questioning why police did not seize Duffy's girlfriend's

---

[5]    Alm agreed that this initial detention was lawful. ECF No. 179 at 3.

[6]    The Court notes, however, that it is hard to hypothesize what more proof police could have discovered that Alm was the Tyler Alm to whom Duffy's contact information was linked. ECF No. 188-2 at 15.

phones but seized his phones.  But an officer explained the decision at the hearing on the motions to suppress:  police did not feel they had probable cause to seize her phone at that time.  ECF No. 197 at 29:16–19.  By contrast, police "believed that [Alm's] phone was being used to communicate regarding drug conspiracy," so police felt they had probable cause to seize Alm's phones.  *Id.* at 29:22–25.  The Court, as noted above, agrees.  Regardless, that police chose not to seize Duffy's girlfriend's phones—even if they had probable cause to do so—has no relevance to whether police lawfully seized Alm's phones.

As to exigency, such circumstances exist when, "if the property is not seized immediately, there is a risk that the evidence contained therein would be lost" or "destroyed."  *Mays*, 993 F.3d at 616.  In the context of digital devices that are likely to contain evidence of a crime, exigent circumstances are readily found when an individual knows he is a suspect, knows that police believe evidence will be found on a device controlled by the suspect, and the suspect could easily destroy that evidence if left in possession of the device.  *See, e.g.*, *United States v. Wright*, No. 23-cr-160 (NEB/JFD), 2025 WL 602465, at *7 (D. Minn. Feb. 25, 2025) (holding that police could "worry that if a suspect . . . was allowed to retain their cell phones, they would imminently delete incriminating information" where the suspect "not only knew that law enforcement was closing in on him as a suspect" but "also knew their suspicion was at least partially tied to his digital trail"); *Mays*, 993 F.3d at 616 (explaining that officers had a reasonable fear that evidence would be destroyed from a laptop where suspect knew police were aware that evidence existed on the laptop).  Here, leaving Alm in possession of his phones would have

created a substantial risk that Alm would destroy the evidence that he knew police suspected would be found on them.

Because police had probable cause to believe Alm's phones contained evidence of a crime, and exigent circumstances justified the immediate seizure of the phones, police had a lawful basis to seize them. *Mays*, 993 F.3d at 616.

## B.    Delay in Securing the Warrant

Alm alternatively argued that, even if the initial seizure was lawful, police unduly delayed in seeking a warrant to search the phones. ECF No. 179 at 6–8.

It is well established that a seizure that is "reasonable at its inception" because it is based upon probable cause "may become unreasonable as a result of its duration." *Segura v. United States*, 468 U.S. 796, 812 (1984). But there is "no bright line past which a delay becomes unreasonable." *Mays*, 993 F.3d at 616 (quoting *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012)). Instead, reasonableness "is measured in objective terms by examining the totality of the circumstances," considering the balance between "privacy-related and law enforcement-related concerns." *Id.* at 616–17 (quotations omitted). As a result, "in some contexts, a delay as short as 90 minutes may be unreasonable, while in other contexts, a delay of over three months may be reasonable." *Id.* (citation omitted). Here, police seized the phones on March 17, 2025, ECF No. 188-2 at 19, and sought the warrant on April 7, 2025, *id.* at 22–25, a 21-day interval.

As to Alm's privacy-related interests, the seizure of his phones "raises powerful Fourth Amendment concerns, both in the quality and quantity of private personal data it likely contains, and because lengthy seizure of an item of vital importance in daily life is

likely to significantly interfere with a person's possessory interests." *United States v. Bragg*, 44 F.4th 1067, 1072 (8th Cir. 2022). But there is no evidence that—despite the phones' importance to Alm—he ever sought to have them returned. *See id.* at 1072–73 (quoting *United States v. Johns*, 469 U.S. 478, 487 (1985)) (noting that defendants who "never sought return of the property . . . have not even alleged, much less proved, that the delay in the search . . . adversely affected legitimate interests"). And there is no evidence that the delay caused Alm to lose any data from the phones. *Id.* at 1072 (considering whether retention of a phone could "cause stored personal data to be lost, or data of potential evidentiary relevance to become stale").

As to law enforcement-related interests, factors to consider include the "legitimate interest in holding the property as evidence, the nature and complexity of the investigation, the quality of the warrant application and the amount of time we expect the application would take to prepare, and any other evidence proving or disproving law enforcement's diligence in obtaining the warrant." *Id.* (citation omitted). Here, police had a strong evidentiary interest in retaining the phones because they had probable cause to believe Alm's phones contained evidence of a crime. *Id.* at 1073 (citation omitted) (explaining that the Fourth Amendment tolerates "greater delays after probable-cause seizures"). The investigation was, as shown by the 25-page warrant application detailing a multi-year and multi-suspect investigation, factually complex and long-lasting. *See* ECF No. 188-2; *see also Mays*, 993 F.3d at 618 (holding that a delay was reasonable where the warrant "affidavit was eighteen pages long and included seven pages of specific information about [defendant's] alleged conduct learned by each of the four investigation teams during their

10

respective investigations"). Indeed, the warrant application detailed the multiple other warrants that had been sought, obtained, and executed as part of the wide-ranging drug-distribution investigation. *See generally* ECF No. 188-2. And Alm points to no evidence showing law enforcement failed to act with due diligence. ECF No. 192 at 5; *see Bragg*, 44 F.4th at 1073 (quoting *Burgard*, 675 F.3d at 1034) (explaining that defendant offered no evidence that police acted without diligence and that "police imperfection is not enough to warrant reversal . . . [where the] delay was not the result of complete abdication of his work or failure to see any urgency" (alteration in original)). On the whole, then, while the 21-day delay was "far from ideal," the Court agrees with Magistrate Judge Bullard that the totality of the circumstances here show that it was not unreasonable. *Mays*, 993 F.3d at 618.

In sum, because police had probable cause to seize Alm's phones, and because police did not unreasonably delay in seeking a search warrant, the Court denies Alm's first motion to suppress.

## II.    Motion To Suppress Evidence from April 2025 Search Warrant

Alm alternatively moved to suppress evidence gathered after police searched his phones pursuant to the April 2025 warrant. ECF No. 135. In support of that motion, Alm largely repeated his argument that police unreasonably delayed in applying for the warrant. *Id.* at 2–3; ECF No. 179 at 7–8. The Court has already concluded that the delay was not unreasonable.

Alm also vaguely asserted that the April 2025 warrant was not supported by probable cause. ECF No. 135 at 2–3; ECF No. 179 at 7–8. But his argument was largely conclusory and simply pointed to the governing legal principles. Indeed, at his most

specific, Alm argued that probable cause did not exist because "[t]he search warrant included several pages of information relating almost entirely to Duffy before even mentioning Alm." ECF No. 179 at 7. Magistrate Judge Bullard rejected this argument and concluded that the warrant was supported by probable cause. ECF No. 188 at 14–15.

Alm does not specifically object to any aspect of Magistrate Judge Bullard's conclusion on this second motion to suppress. At best, he "asks for review of the warrant pursuant to the argument in his motion." ECF No. 192 ¶ 6. When a party does "nothing more than file an objection in name with a one-sentence reference to his previous filings," clear error review is warranted. *United States v. Ramirez*, No. 23-cv-222 (JRT/DLM), 2024 WL 195667, at *2 (D. Minn. Jan. 18, 2024). Having conducted that review, the Court finds no clear error in Magistrate Judge Bullard's conclusion that probable cause supported the April 2025 warrant.[7] The Court therefore denies Alm's second motion to suppress.

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    The R&R (ECF No. 188) is **ADOPTED**;

2.    Alm's objections (ECF No. 192) are **OVERRULED**;

3.    Alm's Motion To Suppress Evidence from Search and Seizure (ECF No. 134) is **DENIED**; and

---

[7]    For that reason, the Court need not address Magistrate Judge Bullard's alternative holding that even if probable cause was lacking, suppression is not warranted because officers had a good-faith belief in the validity of the warrant, which provided an additional justification for the search of Alm's phones. ECF No. 188 at 16–17.

4.      Alm's Motion To Suppress Evidence from a Search Warrant (ECF No. 135)
        is **DENIED**

Dated: June 1, 2026

*s/Laura M. Provinzino*

Laura M. Provinzino
United States District Judge